The correctness of the district court's decision basically hinges on a single issue of claim construction. Does the term ID information stored on a debit card include the card number? Now Phillips tells us that the first thing we should consider is whether this is a case that involves a widely accepted meaning of a commonly understood term. If we think about debit cards, if we think about ID information on a debit card, then the first thing that would occur to anyone is the card number that's printed on the card. Yet the district court didn't address the possibility of construing this term in accordance with this commonly understood meaning, but instead went straight to the specification. Now it's certainly proper to look to the specification to understand the context of the term, but in this case there is no context. There is no disclaimer of card numbers in the specification. There is no lexicography language directed to the term ID information. In fact, the term ID information isn't used in the specification, but it is used in the prosecution history and it's used in a way that answers the question. Realsource had originally presented claims to an ID property. The examiner objected to that language. He didn't understand how you could store a property. In response to that rejection, Realsource amended its claims to substitute ID information for ID property. Consistent with ordinary patent prosecution procedure, Realsource identified its basis in the specification for that amendment, and what Realsource pointed to was a description of information on the card which preferably includes the card number. Phillips tells us that we should consult the prosecution history to see how the inventor understood the term. The district court didn't do this in this case, and had the district court done this, the district court would have found the answer to the question. But that was, excuse me for interrupting, counsel, but the definition that you're referring to is at column 2, lines 45 of the patent. In that statement, the information contained in the magnetic stripe comprises a card record which preferably contains the following encrypted data field, merchant ID and card number. Are they both encrypted or is that a limitation which is not included? That is the only portion of the specification that refers to the card number. No, there are additional portions of the specification that do not refer to the card numbers encrypted. For example, everywhere that the card number is discussed in the invention summary, it's not encrypted, and there's additional language that appears in column 4 around line 10 or so in which the card number is not encrypted. There are additional reasons for concluding that the district court's limitation of the ID information to encrypted information is erroneous. As an initial matter, if you look at claim 3, there the claim expressly states that the card number is encrypted, and claim 3 additionally provides for a step of decrypting this encrypted information. So under the district court's construction, if we construe the ID information in claim 1 as encrypted information, then all of that language in claim 3 that talks about encrypted ID information and decrypting that information becomes superfluous. So it doesn't have to be encrypted? No, it doesn't. Because claim 1 does not require encryption? No. And if you construe claim 1 that ID information on a debit card is encrypted, you reach another curiosity because the term ID information is used twice. First in reference to something on a debit card, and second in reference to something on a terminal. Well, the district court didn't find that the terminal ID is encrypted. There's no point to encrypting it, and none of the defendants have contended that it's encrypted. So if you limit the ID information on a card as encrypted, then the term ID information has two different meanings within the same claim. It's encrypted with respect to the card. It's not encrypted with respect to the terminal. And we've cited multiple cases in our brief, including the Fenn Control case, where this court has declined to make that type of claim construction. But given the—help me out on this. Given the specification where you call out card number separately from what you now call ID information, given the prosecution history as to why the word ID information was used, aren't you trying to expand the language of the claim here to include the card number? I don't think we're trying to expand the language of the claim at all, Your Honor. What we are trying to do is give the claim a construction in accordance with its commonly understood meaning. I think everyone in this room would agree that ID information on a debit card includes a card number. And if we look to the prosecution history, well, by golly, the applicants confirmed that plain and ordinary understanding of the term. But there's additional information that's consistent with this construction. If you look at Claim 2, the ID information is limited to merchant, store, and terminal ID. Presumptively, Claim 1 is broader. So what additional information is covered? Even Best Buy agrees that the district court erred by limiting the ID information of Claim 1 to merchant, store, and terminal ID. But that's because there's a host of other information that's capable of being used on a debit card. It doesn't necessarily follow that it's the card number that's captured in Claim 1. That's exactly right, Your Honor. But unlike the examples Best Buy provided, the department ID, the regional ID, the specification actually describes a card number. The specification describes storing a card number. It describes transmitting a card number. It describes doing with a card number the things that are recited in Claim 1. What I read that, though, is separate from ID information. In the specification, and this is the basis of the district court's construction, there is a parsing, if you will, of card number with respect to ID property. That's the term that's used in the specification. And if we were construing the term ID property, I might very well agree with you. But that's not the term that's used in the patent. The term in the claim is ID information, which was deliberately substituted by amendment in response to an indefinite constitution. Well, of course it was, exactly as you say. But it is to capture the—or it is to get around the concern of the examiner that the word property could not accurately reflect what this invention was about. But now you want to read the word information broader than property, broad enough to catch the card number, though the specification talks about the card number as something separate from the property. If the court is suggesting that these types of amendments in response to an indefinite misrejection always amount to a substitution of terms of equivalent scope, which is a suggestion the defendants have made, then that proposition was laid to rest in this court's 3M innovative case, where this court specifically held that this very same type of amendment made in response to an indefinite misrejection broadened the claim scope. Now, there was a dissent in that case, but the dissent went to a completely different issue. Well, it might or it might not. It would depend on the particulars. And the particulars in this instance are that the applicant said support for information is the following passage of the specification, which describes information on the debit card, and that information preferably includes the card number. But Mr. Spears, I'm still troubled by one aspect of the argument. When you go to the summary of the invention, it indicates that you have a card number in the encrypted ID property. Is that correct? That's correct. And reading directly from Column 1, lines 39, 40. Yes. And during the prosecution, the original Claim 1 had providing a debt card having at least one ID property stored thereon. And when you changed it, you changed the ID property occurrence to ID information. Yes. Now, ID information is not defined in the specification as such. That's right. How are we to tell that the ID information was expanded to include the card number plus the ID property? Because the applicant, in connection with that amendment, was obligated to identify his specification support for the term information. And the passage that he pointed to doesn't mention properties. It doesn't mention ID properties. It talks about information on the card. And part of that information is the card number. Now, if the court agrees that ID information on the debt card includes the card number, then that disposes of a number of different issues in the case, as was pointed out in the briefing. One of the issues that it disposes of is the issue of whether matching is limited to matching for identity. Because if the ID information that's matched includes the card number, it's obviously matched to things that are not. Ordinarily, when this court finds a material error in claim construction, its procedure is to vacate and remand. Obviously, the ID information is critical to the district court's resolution in this case. But we would urge the court, although it was not critical to the district court's resolution, to also review the court's construction of matching, specifically its exclusion of data tables from the match, because that will significantly affect what happens to the case on remand. Actually, that suggestion is helpful, I think, analytically. And I just want to know where you are. If we agree with the argument you are now making, it follows we should, in the decision, deal with matching and terminals at least where the district court's construction went against you. Am I right so far? Matching is critical, because if the court's construction is applied on remand, at least two of these defendants don't infringe. Terminal is less critical, because there's still fact issues under the doctrine of equivalence, and we get to trial. Now, briefly, with respect— But let me ask the second part of my question. Get your mind around the theory that we don't agree with you, if that were the case, that we think the district court was correct. We should so declare case is over. Correct? That's exactly right, Your Honor. Thank you. I appreciate you canting. With respect to this database exclusion, what the district court essentially did was define a prosecution disclaimer as to matching, based on prosecution argument, to a separate limitation. Even Best Buy concedes that's what the district court did. I think this court's precedent is clear, at least in the ACTV and Eagle Comptronics case, that in order to have a disclaimer, it needs to be directed to the limitation at issue. Unless the panel has any further questions, I'll yield the floor to the defendants. All right. That preserves about two and a half minutes of rebuttal time. Mr. McMahon. May it please the Court, I'm Emmett McMahon. There are three groups of defendants here. If I can just explain how we wanted to approach this and to help the Court out a little. All of our systems are different in some ways, the three groups of defendants. So the three parties wanted an opportunity to address the Court. What we've done here is agreed with counsel to split up the three terms. And I was going to handle the ID information, which conveniently, on the card, which was the one that was spoken about. And then when Mr. Scipiora would talk about, or Mr. Fish would talk about terminal and Mr. Scipiora about the matching issue. But we would also be available for any questions, especially since our systems are different. With respect to the ID information on the card, it's our position that the paragraph that counsel refers to on page four of the application, when ID information was substituted, that language actually supports the defendants in this case and an affirmance of the Court. Now, this was a discussion in the preferred embodiment of the patent. But in there, when the inventor said information is supported by a certain language, that language referred to a card record, which preferably contains the following encrypted data files. And then he went on and talked about, it says a merchant ID and a card number in the disjunctive. So the language that they support, and they want to support for information, that actually incorporates the limitations that the Court found. It's also helpful to look at this, and I apologize to the Court, because I don't think this was adequately addressed in my brief. Looking at the issues with a person of ordinary skill in the art, 1997, to see what was happening. The invention talks about programming cards. When a merchant wants to set up with a program, he will go and get some cards, and then they will be programmed with the various information, merchant ID number, card number, phone number, and then they are sent to the terminal for programming, but the card number is not sent to the terminal. So my point here is that not only is the card number and the merchant ID number referred to in the disjunctive throughout the entire patent, even in the summary, and that is the reason why this is just like the multi-tech versus Microsoft case several years ago. The only embodiment here, the only discussion here is when they are in the disjunctive. But not only are they mentioned in the disjunctive, but separate functions are assigned to those. The fact that the card number doesn't go to the terminal is very telling, because card numbers are dynamic, and a person of ordinary skill in the art would know that at that time. People lose their cards, they cancel them, they get stolen, more people join the program, you get new cards. They are not going to be feeding card numbers and changing the terminal on a daily basis. In fact, the patent talked about a very simple Verifone terminal at that time. The idea of the invention was to have something on the terminal that would be matched with something on the card, but they didn't want the dynamic numbers to be matched, because the invention calls for taking the ID information from the card and the ID information from the terminal and sending them to a remote place and matching them. If the card number were intended to be the merchant ID or the ID property or the ID information, this would require the people practicing to be changing their terminals on a daily basis. Why? I just didn't understand that. I'm sorry. All right. Judge. Why would they have to change their terminals? They program in the card numbers. And I thought that was the least dynamic thing. I mean, I suppose you could change department number IDs and the like to accomplish sales and track the SKU numbers, which are key to the items in retail, but the card number is the basic identifier of the possessor of the card. It was not intended to be used as an identifier for purposes of matching to determine whether or not the ID information on the terminal matches the card number. In other words, if the card number were intended to be used to determine whether or not there was the match, the terminal would also have to have the card number on it, but the inventors didn't do that. In fact, they disclosed in their invention that the card numbers, although they get programmed on the card, they do not go to the terminal. Let me just say it back, see if I've got it. The patented invention is designed to make these cards work in a limited set of circumstances predetermined, determined at various times by the retailer. They don't particularly care who has the gift card. What they do care is who's the possessor of the card. What they do care is that this card is appropriate for this item of apparel, this book, at this time, in this store. Have I got that right? Primarily at the store for purposes of invention. The intent was to limit the use of the store. All right. I think we'd better hear from Mr. Cipiora now. Why don't you proceed? Do I proceed, Your Honor? Yes. Thank you, Your Honor. Please, the Court, as Mr. McMahon has indicated, I'll be addressing the matching issue. And just to make clear, and I think Your Honor, Judge Young is clear about this, there are three independent grounds that could be a basis for the lower court's decision. Judge Yackel made findings on Markman with respect to 15 different terms. And as to those terms, at least three of them are independent, one of them being this issue of matching. I guess I'll interject here, simply to say, and you people are all doing it. You're talking about findings. Now, technically, these are all rulings, aren't they? Because we review them as a matter of law. They're rulings. Yes, sir. They're rulings. If they were findings, we might be required to give them some deference. But I'm very clear that they're not. They're rulings. Go ahead. Thank you, Your Honor. With respect to the term matching, then, we put forth two positions at district court level, one of which was accepted by the court, the other was not. The first is that the term is indefinite. And the basis for that argument that we presented to the district court was that there is no clear explanation as to the meaning of that term within the specification. But the district court then went on and defined the term. District court did an admirable job. Judge Yackel did an outstanding job, we felt, in looking at this. If you look at his conclusions. He ruled it in your favor, so he probably did do an admirable job. And you're going to say that. But the interesting thing about Judge Yackel's decision was he didn't adopt either side. If you look at his conclusions, I don't know if he had the opportunity to look through every single thing he looked at. He did an independent review of this record, and it's very thorough. But he said that matching meant equal, right? Identity or equality. Identity or equality. So that if the color is red, it has to be red. Well, in the context of the claim language, we're talking about computers, but the properties we're talking about, because we are talking about properties or information values, terminal, terminal, whatever it might be, they have to be identical. Identical in what respect? The same. The same. Now, if you have a computer, I could have that computer say that whenever you see the X come through, you can match it with a 2X and get a relative match at that point. Now, would that still be a match? Depending on what, in the context, the context of the patent that this patent is talking about, because there's no explicit definition to that effect, the context of the patent was referring to a situation where a computer or a system is loaded with this information, and it's set forth in column 3 of the specification particularly, where there are contract terms loaded onto a database, and then a card reader or a device for programming a card takes this information, the terminal ID, the store ID, the merchant ID, and loads that information on. And then almost in a sequential fashion, the same activity takes place with respect to the terminal. So you have this information loaded on. But it could be on a predetermined basis. Well, the predetermined basis is that there's going to be some kind of identity. Part of the conundrum here is you read the specification. You can read and read and read and never get filled, because it never does specifically say what it means to match. It just says compare them and look for this predetermined relationship, whatever that is. Now, that is why we say it's indefinite, because one cannot look at the face of this. One of ordinary skill would not know. There's infinite possibilities. Interestingly enough, possibly the most persuasive piece of evidence in support of indefiniteness is the position taken by a real source. Rather than try to find specificity, as the district court ably did, they embraced indefiniteness. In fact, they said, nothing in the patent limits matching to any specific criteria. In the brief below on the claim construction brief, they said this, the specification and claims do not even attempt to define what constitutes a successful match. How does one know what the match is then? It could be virtually anything in the world. In terms of putting the public on notice as to what we're looking for in the system, how does one know what that is? Now, Judge Yackel made an attempt, as was his responsibility, to look at the specification, look at the file wrapper, and he acknowledges there's no specific instructions in terms of what matching means in the specification from the file wrapper explicitly. But looking at the specification, he looked at the sections that we thought were appropriate. He looked at the section in column three, starting around line 18, where it talks about the program involved, where one loads on these values and then subsequently save that as merchant ID, terminal ID, store ID, these specific values, then one subsequently loads those values on again for the terminal. But hypothetically, I could program a computer where the input from my terminal would be 123, but the match that sugar-ties to be 321 would still be a match, wouldn't it? In the hypothetical world, one can have different kinds of matches. There would not be an equivalent match. Well, when you say equivalent, the question is that that's part of the indefinite, so what is exactly we're looking for in the context of what this patent is about and looking to the purpose is what Judge Yackel tried to do. And we can't fault him for making this up. That's his responsibility to save the claim from invalidity. We say it's invalid. Judge Yackel tries to save it. Judge Yackel says, I've got to look at the purpose. The purpose is to limit this to a single merchant or to have control so it is in some other direction. It is only one place you can use this card, and therefore you have to go back to what specifically is being loaded. There's no indication of anything of the type you've described. The only indication is of what we've described here, of a literal one-to-one matching of the same pieces of information over the prior art. Looking at specifically what the system is talking about, the idea here is we're going to have a card where we're going to have security on the card, and the security is going to be that that information will be on the terminal, the same identical information with the terminal and the card, and it goes to a remote location to match. That was how they distinguished Anderson, that prior art reference that he was talking about there. Anderson was in a different situation where there was a look-up table, and during the prosecution it was specifically distinguished using the look-up table to compare values off card. It has to be on the terminal, on the card, the same values. By programming it that way, the vendors thought they had security. I don't think they said the same values. Didn't they say a predetermined value? Well, there's a predetermined relationship. That goes back to the invalidity problem, because they don't say it. It's a predetermined... Literally what happens in reading this, and it's kind of unusual, it's a dog chasing its tail. You have a predetermined value, a predetermined relationship between certain values, and that predetermined relationship is such that they're capable of being matched. Then when you go to the issue of matching, well, what's matching, they say? Matching is being able to find a predetermined relationship. Well, what is the guiding principle? What is the criteria being used to establish the matching? Could I ask the same question I asked Mr. Spears? Yes. This court would have to reverse both on ID property and on matching in order for this case to go further. You agree, I take it, that if we were inclined to affirm on either of those grounds, we should do so and stop? Do so and stop. Do so and stop. Stop, yes, sir. Thank you. There's also the terminal issue, but with those two, you're fine. But that's moot if we affirm on either of the grounds that have thus far been argued. Absolutely, yes, sir. Mr. Fish. Thank you. Good morning, Your Honors. May it please the court. My name is Avalyn Fish, and I represent Costco Wholesale Corporation. I'd like to take this moment to also introduce two other gentlemen who are here in court who are on the briefing with me, Mr. Jason Hoffman and Mr. William Sigler. Your Honors, as indicated, I'm here to address the notion of terminal, and I think it would give us a great deal of insight to understand why the battle over the word terminal is existing. Not a single one of the defendants, not a single one of the appellees here today, store merchant ID, that critical piece of information for which real sources try to identify and find infringement. None of us store merchant ID on the point-of-sale device. Not one of us. All of us store this critical piece of data, merchant ID, further upstream in servers that either lead to the back of the store or lead all the way up to corporate headquarters in some instances. So for infringement to ground here, based on what the claim language states, the stretching of the term terminal needs to be included now to include servers. And what we know for sure is that a terminal isn't a server. We know that based on the common teachings of the time. We know that based on the retail environment. We know that based on the prosecution file history. We know that based on the claim language. The challenge here for the plaintiff in this instance is to come up with a definition of terminal that includes a device that stores merchant ID, as I've indicated. Under that definition, the definition of terminal, under the plaintiff's definition of terminal, it should include, therefore, the back office server or potentially a corporate mainframe. Help me out on this. If your colleagues who've argued fail in their arguments and the case goes forward, you nevertheless hope to succeed because if you do, we would reverse the district judge and say, on this record, there's no way that, since there's no literal infringement of terminal, that the doctrine of equivalence is in this case. I've got that right. I believe so, Your Honor. I'll take it as pure speculation that my colleagues won't be successful. But we'll assume that for that moment exists. Why should we determine that today? Why ought the fact finder not have the full record and then apply the full record, not this truncated record? I don't quarrel with it. It's lengthy. But why ought we not have a trial and then determine that? Well, there are two overriding issues with respect to terminal. One, of course, is the literal infringement issue, which we've just identified. The other is our motion for summary judgment on doctrine of equivalence. That's what I was focusing on. Okay, Your Honor. I believe that that needs to be rectified here as well. And I believe, as you'll see in the briefing, there are four different theories by different reasons why this doctrine of equivalence should not be extended in this particular instance. But the one that I would like us to spend some time with this morning and our brief time together is one that really relates to the idea of preemption, that really relates to the concept of foreseeability. And here we're relying specifically on the Glaxo Welcome case from this court in 2004. That case in particular, as this court knows, speaks to the notion of where doctrine of equivalence should begin and end. If a concept was foreseeable, if it was understood at the point in time the patent application was filed, then it should be deemed as unclaimed and passed on, as opposed to the opportunity to come back with it through the process, of doctrine of equivalence, to try to recapture that which was foreseeable but unclaimed at the time. We have that exact situation here. In particular, the Record Appendix A. 1212 is an excerpt from RealSource's own expert in this case, A. 1212. Their own expert in this case identifies the fact that the client-server architecture was well known in the retail industry at the point in time in which this patent application was filed. A. 1212. In particular, Your Honor, and it's on page 49 of Mr. Grossman's report, and here I'm reading verbatim with some ellipses, it was necessary to store files at a central computer at the store, dot, dot, dot, that could be accessed by all terminals, dot, dot, dot, because this infrastructure was already present when gift cards were introduced. A. 1212, page 49 of RealSource's own expert report. It indicates very clearly that the terminal-server architecture existed at the time that this patent application was filed. It went unclaimed, and based on the Glaxo Welcome case, should not be permitted to be recaptured through doctrine of equivalence. For that reason, I believe the district court was in error when it chose not to grant our summary judgment motion on doctrine of equivalence. So figure 5 is insufficient to cover that particular terminal? I'm sorry, Your Honor? Figure 5 of the patent is insufficient to cover the terminal determination? I think figure 5 is the element 50, Your Honor, is, of course, the description of the terminal. That is the description of the terminal, those four elements within it, those four elements inside that apparatus. We know figure 5, of course, is the entirety of the concept here, in part because of the claim language used in describing it, the description used for figure 5 in the summary of the descriptions. In column 2, it ends with the language in the present invention. And we know from the Honeywell case that this court has heard that that now is a limitation that extends to the totality of this patent. That, coupled with line 32, sir, where, again, we start with in column 1, line 32, where we start with in the present invention, again, relying on the teachings of the Honeywell case, we now know what follows, relates to the totality of the patent, lines 40 through 51 in column 1, then begin to describe the process, the actual event of this card being used in the way that the court has already defined it during this morning's proceedings. We've given you some extra time, so we'll have to call a halt now and have Mr. Spears rebuttal. Thank you, Your Honor. You have four minutes, Mr. Spears. Fair enough, Your Honor. I'd like to begin by clarifying a response I made to Judge Young's question. With respect to matching, if this court affirms the district court's construction as matching for equality, we've raised fact issues under the Doctrine of Equivalence for all defendants. If this court affirms matching as excluding matching via data tables, the case is over as to Costco and Best Buy, but it goes back for discovery for the remaining defendants. Next, I'd like to address a point that Mr. McMahon made with respect to whether card ID is transmitted to the computer, and it's clear that it is. In column 4, around line 34, the patent states that the intelligent network platform debits or accredits an account balance associated with the card number. The only way the computer can do that is if it received the card number. So we know that the computer receives the card number, and back to the construction issue. Claim construction involves a process where you may have things that fall into one camp and things that fall into the other camp. Well, what do we have that's consistent with a card number being part of ID information on a debit card? We have a plain and ordinary meaning. The defendants don't contest that. We have a prosecution history in which the applicant identifies a card number as being on a debit card. We have a presumption of broader scope arising from claim differentiation. And against all of that, the only thing that the defendants have is a parsing in the specification of card number and ID property, which is a term that's not used in the claim and is a term that was dropped by an amendment. Well, I would have thought that you would have argued that the indefinite rejection by the PTO would give you the opportunity to expand the breadth of your claim. That's exactly right, and that's exactly what happened here, just as happened in the 3M Innovative case. But you never argued that. Yes, we did argue that, Your Honor. To the extent that ID property excluded a card number, which I'm not taking a position one way or the other, by dropping ID property and substituting ID information, the applicants would have expanded the scope of the claim because they identified a card number as part of the written description support. Now, I'd like to move on to an argument raised by Mr. Fish concerning this foreseeability business. The Glaxo case, and you need to read it carefully, concerns what you do to rebut the Festo presumption arising from narrowing amendments that surrender subject matter. It has absolutely no relevance whatsoever to terminal in this case. The only amendment of terminal was to change merchant terminal to terminal. That amendment didn't surrender anything, if anything, it broadened scope. And none of the cases that Costco has cited apply this foreseeability analysis to neutral amendments or to amendments of claim broadening. And the entire analysis is inconsistent with the doctrine that what we are talking about is what the patentee needs to show to rebut a presumption of surrender. And there is no surrender associated with these amendments. Do you think that you put the examiner on notice that your amendment was a broadening amendment? I don't think that there is any obligation for an applicant to say, by this amendment we are broadening the scope of the claims. All the applicant has to do is identify the written description support for that amendment. In this particular instance, that had the effect of broadening the claims just as it did in the 3M case. Are you admitting then that you didn't notify the examiner that your substitution of information for property worked a broadening? I admit there was no expressed statement to that effect in the file history. Wasn't there a statement saying that the use of the different term was a clarifying amendment? In context, what the applicant was doing was addressing a rejection in which the examiner had a concern as to whether property was something that could be stored. In context, what the applicant was doing was substituting language that was consistent with something that could be stored. We are all familiar with the notion of computer storing information. That's one of the things that computers do. I'm bothered by the fact that you now say that it was intended to be and actually was a broadening amendment, but I don't see the slightest flagging of that for the examiner. If it had been flagged, I would have expected the examiner to have big problems about prior art or about enablement or about indefiniteness. And there's no indication that the examiner had any such concerns. As I recall, he just allowed the claims once you made that substitution or that change. I'm not saying that the applicant intended this to be a broadening amendment. Whether or not it was broadening or not was simply not part of the applicant's thought process. What the applicant was doing was substituting language that wasn't subject to this objection of not being able to store it. By substituting information for property, they came up with language that the examiner was able to accept as something that is storable on computers. Now, what we have here... But in the process, it expanded. In the process, it expanded. It arguably expanded the claim in a way that is relevant to this dispute. We have to get back to the question that we're trying to decide. Does ID information include a card number? And whether there was expansion or not is peripheral to the question. What's important about the prosecution history is that it directly places a card number within the scope of ID information because that's what the applicant said that ID information was supposed to include. Finally, a couple of words... Isn't that a little bit of a problem for you? It's not part of the basic invention. It's just an option. Well, if it's a preferable option that the applicants identified during prosecution, then there is a strong presumption in this court's precedent for construing claims to cover an applicant's preferred embodiments. And if this is a preferred embodiment, then all of that case law comes into play. But in the process of expanding the scope of the invention, you might have expanded to the point where the invalidity issue might be a stronger point, too. And if we did, and if we get back on remand, these defendants will be perfectly free to raise all of the prior art that they want to. None of those prior art defenses have been precluded by any of the proceedings below. Now, do we actually have a ripe issue in front of us regarding indefiniteness? That was the point I wanted to make, Your Honor. The basis of the judgment was non-infringement. None of the defendants have cross-appealed on invalidity. So arguably, the issue may not be in front of us. It may be what motivated the trial judge to do what he did by way of definition. But as far as I could tell, there was no adjudication regarding validity for possible indefiniteness. There was no adjudication. Actually, there was an adjudication. There was a denial of a summary judgment directed to claim indefiniteness. That was part of the court's claim construction order. But what's important is we don't have a cross-appeal from any of the defendants as to that denial. And unless the panel has any... Yeah, but even a denial of a summary judgment motion isn't really an adjudication on the merits. It just says we're going to have a trial on the issue. That's right, and there was such an adjudication in the district court's claims of construction rule. So unless the... What do you think we ought to do with our case law to prevent the kind of conundrum presented here? With respect to... I mean, everybody... This is like three blind men trying to describe the same thing. The examiner doesn't know what he's doing. He doesn't understand what he's doing, it appears to me. I'm not asking you to agree with that. But it looks to me like he doesn't understand what an important change has been made by the amendment, as we are now being told. And therefore, he doesn't worry about claim indefiniteness or enablement or prior art that I can see. Then we have the trial judge who's confronted with an apparent invalidity, and he's trying like crazy to save the claim and gives it quite a narrow construction, one might conclude. Well, that's kind of understandable because he can only deal with what's handed to him. And then it comes to us, and we're in this position where we have to say, well, did he try too hard to save the claim and construe it too narrowly, or was it an accurate construction? And then, just to be a little more metaphysical, was it the perfect construction? If our case law postulates that there's only one construction and it's the correct, perfect, straight-from-God construction and everything else is an error, then what do we do with a decision like what we have in this case? Is this a perfect construction? Is this a terrible construction? Is this really close to an accurate construction but maybe 5% off? Is this something where there should be some deference to the trial judge who wrestled with this, looks to me like, with considerable effort and time and intelligence? Or do we just get to start all over again, kind of ignore what he did, and just listen to you and the snippets of language you point out quite accurately in the specification and do it all over again as if nothing has happened heretofore? Does this make any sense? Can I answer what I think was your last question? I think that the district court didn't have to do anything to narrow matching to save its validity. Our expert, Dr. Grossman, had no difficulty applying that term. The defendants have presented absolutely no evidence, be it from a lay witness or an expert witness, that anyone would have any difficulty writing routines that match two values. Judge Gallarza pointed out some examples. Or, more importantly, recognizing such routines in a system. The district court had no problem construing the term predetermined relationship. Well, if that term is definite, then matching must be definite too, because all that is is a test for a predetermined relationship. As to your question about what the examiner ought to do with these amendments, the NPEP does set forth fairly clear guidelines  by way of explanatory text accompanying an amendment. And the applicant, in this case, followed those guidelines, identified where the support for their amendment was. I guess the thrust of my question is, why shouldn't we defer to the trial judge's claim construction if we think it was good enough, even if it wasn't perfect? I would say that we don't have to strive for perfection in instances where the differences between what is perfect and what isn't perfect are not dispositive of the case in front of us. But here we have a situation where the very question of infringement as to all of these defendants boils down to whether a card number is included within the scope, within the meets and bounds of ID information on a debit card. And I don't see how you can resolve the case without answering that question, yes or no. All right. One final point. The trial judge did dismiss all of the counterclaims. Correct. Including validity. So validity is still outstanding. Yes, that's exactly right. I think it was a conditional dismissal that allows for validation on demand. That's right. So basically validity is still there. I agree, absolutely. I'm sure we'll see it in the future. We'll see all of you back here probably several times. Or maybe not settle the case. Well, that's a possibility. One can always hope. We thank you all. The case is taken under advisement.